PAPENFUS, Plaintiff and Respondent, vs. SHELL OIL COMPANY, INC., and another, Defendants and Appellants: SEAVER, Impleaded Defendant and Respondent.*

*January 18—February 15, 1949.*

* Motion for rehearing denied, without costs, on April 12, 1949.

234

For the appellants there were briefs by *Godfrey, Pfeil &amp; Godfrey* of Elkhorn, attorneys, and *Emmett Horan* of Mil-

waukee of counsel, and oral argument by *Mr. A. L. Godfrey* and *Mr. Horan*.

For the respondent there was a brief by *Thorson, Seymour & Korf* of Elkhorn, and oral argument by *Arthur T. Thorson*.

*Cavanagh, Stephenson, Mittelstaed & Sheldon* of Kenosha, for the impleaded defendant.

HUGHES, J.    The plaintiff is a farmer in Walworth county. His farm is located on Highway 12 just north of Elkhorn. On April 22, 1946, he was driving a team and manure spreader north on Highway 12 from his barnyard toward a field.    The defendant Tilton was driving his automobile north on Highway 12 from his home in Wilmette, Illinois, to Madison, Wisconsin, on business of his employer Shell Oil Company.    The impleaded defendant Seaver is a farmer living near Harvard, Illinois, and was driving his automobile north on Highway 12 to the village of East Troy.    As they left the city of Elkhorn Tilton was ahead of Seaver.

There was no dispute that the Tilton car struck the back of the plaintiff's manure spreader and knocked the plaintiff to the pavement, causing the injuries for which he seeks to recover.

There was sharp conflict in the testimony as to whether the accident occurred as a result of the negligence of the defendant Tilton or of the impleaded defendant Seaver.

After the accident plaintiff settled all claims that he had against Seaver by accepting $1,900 from Seaver's insurance carrier and giving a covenant not to sue.    Thereafter he brought suit against Tilton and Shell Oil Company, and upon the application of the defendants, Seaver was joined as a party defendant.

The plaintiff claimed that the accident occurred as a result of the negligence of Tilton in that he overtook and crashed into the rear of plaintiff's manure spreader.

The defendants contended that as Tilton approached the manure spreader cars were coming from the north so as to interfere with his passing and that at seven hundred feet to the rear of the spreader he slowed down; that at three hundred fifty feet he further slowed down, and at the time of the accident he was right behind the plaintiff, proceeding at about the same speed as the spreader. Tilton's contention was that Seaver then crashed into the rear of his car, driving it with force into the spreader.

The case was submitted upon a special verdict, the first question of which read:

"Did the automobile operated by the interpleaded defendant Tracy. Seaver, collide with the rear of the automobile operated by the defendant, Harold Tilton, before the automobile operated by the defendant, Harold Tilton, collided with the manure spreader?
"Answer: No."

There followed questions as to the negligence of Tilton and its causal effect, and questions as to the negligence of Seaver and the causal effect of his negligence, if established.

Question 6 read:

"At the time and place in question and under the conditions and circumstances shown by the evidence was the defendant, Harold Tilton, negligent:
"(a) With respect to suddenly instead of gradually reducing the speed of his automobile immediately before the Seaver car collided with it?
"Answer: Yes."

The jury found in response to question 7 that Tilton's negligence, as established by its answer to question 6, was causal.

The trial court instructed the jury that the burden of proof as to questions 1, 4, and 5 rested upon the defendant Tilton; as to questions 2 and 3 upon the plaintiff; as to questions 6 and 7 upon the interpleaded defendant Seaver.

We are of the opinion that the trial court, in instructing the jury that the burden of proof rested upon the defendant to convince the jury that question 1 should be answered in the affirmative, was in error and that such error was prejudicial to Tilton.

A special verdict shall consist of plain questions calling for a finding of ultimate facts by the jury. *Carlson v. Strasser* (1942), 239 Wis. 531, 2 N. W. (2d) 233.

In *Wausaukee v. Lauerman* (1942), 240 Wis. 320, 326, 3 N. W. (2d) 362, it was said :

"The jury was asked whether the rainfall was 'greater than an ordinarily prudent and intelligent owner of a dam on the Wausaukee river ought reasonably to anticipate might occur.' This question probably should not have been included in the special verdict as it simply constituted a splitting of the issue of negligence or a cross-examination of the jury as to that issue. There was also included in the verdict proper questions relating to defendant's negligence : (1) With respect to maintaining openings in the spillway; (2) with respect to the discharge of water through the flume pipe; and (3) with respect to properly maintaining the embankment. These were all answered favorably to defendant under proper instructions; so also was the first question. The three questions with respect to defendant's conduct fully covered the issue of negligence, and as we have said, the first question merely asked the jury to consider separately a fact bearing upon the element of foreseeability. Having been submitted, it was proper to assign plaintiff the burden of proof with respect to it. The question was nothing more than a minutely subdivided inquiry into defendant's negligence, and as to that issue, certainly plaintiff had the burden of proof. The inclusion of the question in the special verdict was not prejudicial to plaintiff."

In this case the inquiry contained in the first question of the special verdict pertained to evidentiary matter only. It was an element which should have been considered by the jury in

determining the negligence of the defendant Tilton. If his car was struck by the Seaver car before he collided with the manure spreader, he would not have been negligent unless traveling so close behind the spreader as to create a dangerous situation, so that joint negligence of both combined to cause the injury.

It was apparently upon this latter theory that question 6 was framed. It would seem clear that question 6 should have been prefaced by a statement that it was to be answered only if question 1 had been answered "Yes." If Tilton collided with the spreader first, then that was the cause of the injury, and not his traveling too close behind it.

Although the trial court instructed the jury that the burden was upon the plaintiff to establish the negligence of Tilton, by segregating an element of evidence bearing upon that ultimate fact and placing the burden as to that upon Tilton, it committed error.

We cannot escape the conclusion that when the jury had decided the first question it disposed of the whole case, and probably paid little heed to the instruction on burden of proof bearing upon the negligence questions proper. For this reason a new trial is necessary.

Plaintiff moved to review the order of the trial court that the $1,900 paid by Seaver's insurance carrier be deducted from the verdict of $13,335.20 before entering judgment. Since upon a new trial a verdict in favor of the plaintiff may be rendered, we deem it advisable to dispose of this question in order to avoid the possible need for a second appeal upon that issue.

In ordering the deduction the trial court relied upon the decision in *Haase v. Employers Mut. Liability Ins. Co.* (1947), 250 Wis. 422, 27 N. W. (2d) 468. There the plaintiff had given to one joint tort-feasor a covenant not to sue upon payment of $1,500. He then sued the second joint tort-feasor and was allowed by the jury only $1,000 as his total damages.

This court held that under the rule preventing unjust enrichment plaintiff could not be permitted to recover an additional sum from the second joint tort-feasor.   We do not review the soundness of the rule in that case because it is unnecessary and has not been sufficiently briefed.

In a long line of decisions this court has held that payments voluntarily made to an injured person inure to his benefit and not to the benefit of a tort-feasor whose wrongful act caused the injury, thus : Where plaintiff received vocational rehabilitation it was not deductible from the judgment against a tort-feasor.   *Cunnien v. Superior Iron Works Co.* (1921), 175 Wis. 172, 184 N. W. 767.   Payment of wages by employer of plaintiff during disability resulting from injury does not prevent recovery for loss of wages from wrongdoer.   *Campbell v. Sutliff* (1927), 193 Wis. 370, 214 N. W. 374.   See also *Culbertson v. Kieckhefer Container Co.* (1928), 197 Wis. 349, 222 N. W. 249.   A portion of burial expenses, though voluntarily paid by children of deceased, is recoverable in an action by personal representative of deceased.   *Verhelst Construction Co. v. Galles* (1931), 204 Wis. 96, 235 N. W. 556.

While under the law of accord and satisfaction a settlement with one joint tort-feasor bars recovery against all other tort-feasors for the same cause, the granting of a covenant not to sue does not have such effect.

That the payment by Seaver in this case must be considered a gratuity becomes clear from the fact that the jury found him not to be a joint tort-feasor.   It is true that the payment was made by Seaver's insurance carrier under the fear that he might be found by the jury to be a joint tort-feasor, and that it was accepted by the plaintiff no doubt in fear that he would not.   The jury finding established that he had no duty to pay. The payment, being a voluntary contribution to settle any possible liability to the plaintiff, under the cases must be held to inure to the plaintiff and not to the defendants Tilton and

Shell Oil Company. The situation is quite different where, as in the *Haase Case, supra,* the person who got the covenant not to sue was ultimately found to be a tort-feasor.

The appellants also urge that the damages are excessive. Since there will be a new trial, we deem it unnecessary to pass upon this question.

*By the Court.*—Judgment reversed and cause remanded for a new trial.

FRITZ, J., dissents.

* Motion for rehearing denied, with $25 costs, on April 12, 1949.